UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Manesha F.,[1]

        Plaintiff,

v.

Frank Bisignano,
*Commissioner of Social Security*,

        Defendant.

Case No. 25-cv-849 (JRT/DJF)

**ORDER**

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Manesha F. ("Plaintiff") seeks judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") ("Decision"). Plaintiff argues Defendant's Decision was erroneous because he improperly evaluated the evidence concerning her mental impairments, he failed to ensure the record was sufficiently developed, and he did not properly evaluate the medical opinions on which he relied. (ECF No. 9.) As a result, Plaintiff asks the Court to reverse the Decision and remand this matter to the Commissioner under sentence four of 42 U.S.C. § 405(g). (ECF No. 1.) The Commissioner asks that the Decision be affirmed in its entirety. (ECF No. 17.) This matter is before the Court on the parties' briefs. For the reasons given below, the Court recommends that the Decision be affirmed.

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in court filings in Social Security matters.

1

**BACKGROUND**

I.      **Plaintiff's Claim**

Plaintiff applied for DIB and SSI on November 10, 2021 (*see* Soc. Sec. Admin. R. ("R.") 262)[2].  At that time, she was 38 years old (*id.*), with a college education (R. 301) and previous work experience as a cashier, customer service representative, insurance consultant, and receptionist (*id.*).  Plaintiff alleged a disability onset date of June 12, 2017 (R. 296), resulting from bipolar disorder, chronic pain in her right knee, pulmonary embolism, gastroparesis, and an arachnoid cyst on her brain.  (R. 300.)

II.     **Regulatory Background**

An individual is considered disabled for purposes of Social Security disability benefits if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).[3]  In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).  "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or

---

[2] The Social Security administrative record ("R.") is filed at ECF No. 11.  For convenience and ease of reference, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

[3] The provisions of Title II (DIB) duplicate the provisions of Title XVI (SSI) of the Social Security Act.  For simplicity, the Court cites only to the statutory provisions and regulations under Title XVI.

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must establish at step two that she has a severe, medically determinable impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find the claimant is disabled if she has satisfied the first two steps and she has an impairment that meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). 20 C.F.R. § 416.920(a)(4)(iii).[4] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. 20 C.F.R. § 416.920(a)(4)(iv); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

---

[4] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" affected. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

### III.    Procedural History

The Commissioner denied Plaintiff's application for DIB and SSI initially (R. 89-90) and on reconsideration (R. 115-16).  On September 15, 2023, at Plaintiff's request (R. 187-88), an Administration Law Judge ("ALJ") held a hearing on Plaintiff's application (R. 39-64).  An attorney represented Plaintiff during the hearing, and Plaintiff and a Vocational Expert ("VE") testified.  (*Id.*)  During the hearing, Plaintiff's attorney stated that he intended to obtain a medical source statement from Plaintiff's treating psychiatrist, Dr. Ngozi Wamuo, regarding Plaintiff's functional limitations, and requested a two-week extension to submit it.  (R. 59.)  He further asked the ALJ to consider ordering a consultative examination if he did not submit such a statement.  (*Id.*)  The ALJ stated he would "think about that".  (*Id.*)  The ALJ issued his Decision on February 7, 2024 without ordering a consultative examination.  (R. 13-33.)

In his Decision, the ALJ stated that he denied Plaintiff's request for a consultative examination because he found "that the evidence of record from [Plaintiff's] medical and mental health provider is sufficient to make a determination as to the severity of [Plaintiff's] mental impairments, and the resulting mental work limitations."  (R. 17.)  The ALJ then proceeded to conduct the five-step evaluation process.  (R. 17-19.)  The ALJ determined at step one that, although Plaintiff had worked since her alleged disability onset date, this work did not qualify as substantial gainful activity.  (R. 19.)  At step two, the ALJ found Plaintiff had the following severe impairments: myotonia congenita; gastroparesis with gastroesophageal reflux disease; moderate asthma with allergic rhinitis; obesity; mild degenerative joint disease of the knees; right ankle sprain/avulsion fracture; right shoulder tendinopathy and subacromial bursitis; right wrist tendinopathy; chronic headaches; bipolar disorder with psychosis; and generalized anxiety

4

disorder. (R. 19.) At step three, the ALJ concluded that none of Plaintiff's impairments individually or collectively met or medically equaled any impairment in the Listing. (R. 20-24.)

The ALJ then determined Plaintiff's RFC. He found that:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; occasional balancing as that term is defined in the Selected Characteristics of Occupations; occasional stooping, kneeling, crouching, and crawling; with indoor work in a well-ventilated, HVAC-controlled setting; no indoor or outdoor work requiring direct exposure to concentrated sources of pulmonary irritants; simple instructions and use of judgment as necessary to complete, simple, routine, and repetitive tasks; and changes in a routine work setting such that any changes in processes and products can be learned in a manner and time consistent with specific vocational preparation (SVP) 1 or 2 work as defined in the Dictionary of Occupational Titles.

(R. 25.)

In reaching this determination, the ALJ reviewed the record in detail, taking into consideration the medical opinions and prior administrative medical findings in the record, Plaintiff's medical testing, examination and treatment history, her testimony regarding her symptoms, her employment history, and her activities of daily living. (R. 25-31.)

After determining Plaintiff's RFC, the ALJ found at step four of the sequential analysis that Plaintiff had past relevant work: (1.) as a Customer Service Representative (SVP[5] 5); and (2.) in a composite job as a Cashier (SVP 2) and a Stock Clerk (SVP 4), "but performed as light." (R. 32.) The ALJ then determined that Plaintiff is unable to perform such past relevant work as actually or generally performed. (*Id.*) Relying on the VE's testimony, however, he then found at step five that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are unskilled jobs that exist in significant numbers in the national economy that

---

[5] "SVP" refers to the "specific vocational preparation" for a given occupation. Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the Dictionary of Occupational Titles ("DOT"). Social Security Ruling (SSR) 00-4p.

Plaintiff can perform, including: marker (DOT 209.587-034, with around 136,780 jobs in the national economy); routing clerk (DOT 222.687-022, with around 117,980 jobs in the national economy); and router (DOT 222.587-038, with around 25,136 jobs in the national economy). (R. 32-33.)  Based on these findings, the ALJ concluded Plaintiff was not disabled. (R. 33.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1), and this lawsuit followed.

## DISCUSSION

Plaintiff argues the ALJ's Decision is erroneous because he made three crucial errors when formulating her RFC: (1.) he failed to account for the episodic nature of Plaintiff's bipolar disorder; (2.) he lacked adequate evidence to formulate an RFC and therefore erred in declining Plaintiff's request for a new consultative examination; and (3.) he failed to evaluate the supportability and consistency of the state agency consultants' medical opinions. (*See* ECF No. 9 at 12-24.)

## I.      Standard of Review

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  This "threshold … is not high." *Id.*  "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Remand is warranted, however, when the ALJ's opinion contains insufficient factual findings that "considered in light of the record as a whole, are insufficient to permit [the] Court to conclude that substantial evidence supports the Commissioner's decision." *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008); *see also Chunn v. Barnhart*, 397 F.3d 667, 672 (8th Cir. 2005) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review). At minimum, the ALJ must build a logical bridge between the evidence and the RFC he creates. He does so by "includ[ing] a narrative discussion describing how the evidence supports each conclusion." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7. "[T]he [ALJ] must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*; *see also Lee R. v. Kijakazi*, No. 20-cv-1989 (BRT), 2022 WL 673259, at *4 (D. Minn. Mar. 7, 2022) (finding ALJ failed to create a "logical bridge" between the evidence and his conclusions); *Weber v. Colvin*, No. 16-cv-332 (JNE/TNL), 2017 WL 477099, at *26 (D. Minn. Jan. 26, 2019) (same).

## II.     The ALJ's RFC Determination

Plaintiff testified at the hearing that she was unable to work because her various physical impairments limited her ability to sustain work activities for extended periods of time and because her mental impairments made it difficult for her understand instructions and focus. (R. 25, 306, 311.) Upon carefully reviewing Plaintiff's testimony, medical records, treatment history, examination records, activities of daily living, and the opinions of Plaintiff's treating medical providers and the state agency medical consultants, the ALJ determined that her medically determinable impairments limited her ability perform work activities, and he adjusted her RFC accordingly. (R. 19.) But he concluded the objective medical evidence did not suggest these conditions to be as intense, persistent, and limiting as Plaintiff testified. (*Id.*)

In reaching this conclusion, the ALJ meticulously examined Plaintiff's medical records regarding each of her severe physical and mental impairments.  (R. 22-24, 26-31.)  As to her physical impairments, the ALJ noted that the medical records characterized her conditions as mild (R. 787, 894, 986, 1031, 1052, 1055, 2017, 2506, 2981) and reported minimal symptoms and complaints (R. 453, 608, 657, 761, 895, 1105, 2013, 2319, 2452, 2506, 2597, 2726, 2859).  (R. 26-29.)  Based on his review of this evidence, the ALJ determined her examination findings were minimal and her treatments were conservative.  (R. 29.)  He also considered her "wide range of reported activities in terms of school, work, and heavy computer use, as well as routine household chores."  (*Id.*)  Though he found Plaintiff suffered from severe upper extremity impairments, he did not include any manipulative limitations in her RFC because "the evidence related to these impairments is minimal and sporadic, and fully addressed with the limitation to the light exertional level, particularly given [Plaintiff's] reported activities."  (*Id.*)

In assessing her mental impairments, he noted she was admitted to psychiatric units for short stays on three separate occasions due to hallucinations and incoherent speech: once in 2020 and twice in 2023.  (R. 23, 30, 555-64, 2759-61, 2824-26.)  All three admissions were the result of noncompliance with psychotropic medication.  (*Id.*)  Outside of these episodes, her treating psychiatrist and other medical providers reported normal affect and thought processes.  (R. 30, 431, 447, 458, 477, 486, 549, 567, 574, 604, 609, 627, 641, 646, 693, 738, 748, 758, 765, 796, 1201, 1559-60, 1563-64, 1583-84, 1589-90, 1613-14, 1655, 1700-01, 1709, 1734-35, 2003-04, 2100, 2109-10, 2113-14, 2154, 2240, 2664, 2747.)  Additionally, Plaintiff "reported engaging in a wide range of activities despite her mental impairments, including work, school, and exercise activities, and household management activities."  (R. 30, citing R. 306-13, 344-56, 503-04, 692, 783, 1350, 2306, 2589, 2691, 2700, 2708.)

8

In reaching his RFC determination, the ALJ also closely examined the opinion evidence from each of Plaintiff's treating physicians and detailed his evaluation of their persuasiveness based on: (1.) consistency with the other objective medical evidence in the record; and (2.) whether the opinion was well-supported by objective medical evidence.  (R. 29-30.)  But his analysis of the state agency medical consultants' opinions was not nearly as detailed.  In his evaluation of the medical consultants' opinions, he simply stated:

> In reaching this conclusion, I have considered the opinions of the consulting State agency medical sources.  I find the opinion upon reconsideration to be better supported by and more consistent with the medical evidence, including the hearing level evidence, particularly in terms of occasional postural movements, other than no climbing of ladders/ropes/scaffolds.  Therefore, I find the reconsideration opinion more persuasive.

(R. 29.)  And in his evaluation of the consulting state agency psychologists, he stated:

> These sources opined the claimant would be able to perform limited detailed tasks, with routine changes in the work environment … I find these opinions generally persuasive, as they are supported by and consistent with the evidence cited above regarding the claimant's mental health symptoms and course of treatment.

(R. 31.)

Based on these findings, and taking into consideration the record as a whole, ALJ determined Plaintiff's limitations as set forth in her RFC.  (R. 30-31.)

## III.    Analysis

### A.    Episodic Nature of Plaintiff's Bipolar Disorder

Plaintiff relies on three sets of evidence to support her assertion that the ALJ erroneously failed to consider the inconsistent nature of the symptoms of her bipolar disorder: (1.) her three admissions for inpatient care to treat her psychiatric symptoms; (2.) a single note from her therapist; and (3.) two checkbox reports from her treating psychiatrist (*id.* at 14-16).  The Court is unpersuaded that this this evidence demonstrates that the ALJ's Decision reflects an abuse of discretion.

Plaintiff's inpatient admissions are not compelling evidence that additional limitations are required.   When a person's bipolar disorder can be controlled with medication, and any deterioration in mental condition is due to noncompliance with prescribed treatment, the impairment "cannot be considered disabling." *Brace v. Astrue*, 578 F.3d 882, 885 (8th Cir. 2009). Here, the record shows Plaintiff's three admissions were the product of treatment noncompliance. (R. 555-64, 2759-61, 2824-26.)  Except for these relatively isolated incidents, Plaintiff appears to have complied with the pharmacological portion of her treatment, which has proven highly effective at managing her symptoms.  (R. 431, 447, 458, 477, 486, 549, 567, 574, 604, 609, 627, 641, 646, 693, 738, 748, 758, 765, 796, 1201, 1559-60, 1563-64, 1583-84, 1589-90, 1613-14, 1655, 1700-01, 1709, 1734-35, 2003-04, 2100, 2109-10, 2113-14, 2154, 2240, 2664, 2747.)  The ALJ therefore reasonably concluded that these inpatient admissions did not support additional limitations in Plaintiff's RFC.   Because the ALJ thoroughly considered Plaintiff's entire mental health treatment history in reaching his decision and explained his reasoning, and the ALJ's assessment of that evidence is not unreasonable, the Court must defer to the ALJ's determination.

Plaintiff also relies on a single note from her treating social worker therapist to support her argument.  (ECF No. 9 at 14, citing R. 2117.)  Plaintiff argues this evidence shows that her mental status deteriorates from time to time to a degree that prevents her from securing long-term employment.  (*Id.*)  But this evidence is relatively weak.  The note she cites only reports "some deterioration in mental status," with no psychotic signs or symptoms.  (R. 2117.)  Moreover, the Court's role is only to determine whether substantial evidence supported the ALJ's decision, not whether evidence existed to support a contrary decision.  *See Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005) ("If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite

conclusion."). Because substantial evidence supports the ALJ's decision, the Court must affirm it.

Finally, Plaintiff points to two checkbox forms that Plaintiff's treating psychiatrist, Dr. Ngozi Wamuo, completed in March 2023 and November 2023. (ECF No. 9 at 15; R. 2333-27, 2988-89.) The ALJ found the March 2023 form was not persuasive because "the record contains no treatment reports from Dr. Wamuo after July 2022" and the opinion "contains no specific work limitations that would preclude all work, much less for any continuous 12-month period." (R. 31.) In other words, there is no basis to conclude Dr. Wamuo premised his opinion on any objective medical evidence at the time he completed the form, and the form lacked any particularity concerning Plaintiff's functional limitations. The ALJ found the November 2023 form unpersuasive for similar reasons. Though the November 2023 form at least cites Plaintiff's hospitalizations for mania and confusion, the ALJ's review of the underlying treatment records showed these admissions were the product of treatment noncompliance and Plaintiff otherwise reported normal mental statuses. (R. 24, 30, 31.) Additionally, the ALJ noted the form failed to explain how Dr. Wamuo formed his opinion. (R. 31.) In other words, the ALJ properly analyzed Dr. Wamuo's November 2023 opinion and determined it was not consistent with other medical evidence in the record and lacked adequate support for its conclusions.

Plaintiff does not argue the ALJ failed to comply with agency regulations in how he evaluated Dr. Wamuo's opinions; rather, she argues the ALJ improperly discounted those opinions based on other evidence in the record that showed Plaintiff having normal mental statuses. (ECF No. 9 at 15.) Plaintiff's arguments boil down to a request that the Court reweigh the evidence. But as previously stated, the Court's role is to determine whether substantial evidence supported the ALJ's Decision, not whether other evidence in the record could support a different result. *See*

*Clay*, 417 F.3d at 928.  Moreover, the Court is not convinced that any of the evidence Plaintiff cites suggests the ALJ failed to consider the entire record.  To the contrary, Plaintiff appears to focus on isolated pieces of evidence that pale in comparison to a larger record that the ALJ cited at length in his Decision.  The Court is therefore unpersuaded by Plaintiff's suggestion that the ALJ failed to appreciate the episodic nature of Plaintiff's bipolar disorder.

### B.        Sufficiency of the Record

Plaintiff further argues the ALJ erred in denying her request for a consultative psychological examination.  (ECF No. 9 at 16.)  "It is reversible error for an ALJ not to order a consultative examination when such an evaluation is *necessary* for him to make an informed decision."  *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (citation modified) (emphasis added); *see also Darris v. Saul*, No. 3:20-cv-42 (BSM/JTR), 2020 WL 5543346, at *2-3 (E.D. Ark. Sept. 16, 2020) (reversing ALJ's decision because he failed to order a consultative examination when state agency medical consultant opined that a consultative examination was "required for proper evaluation of [plaintiff's] application for benefits").  But when an ALJ's Decision is supported by substantial evidence in the record without an additional consultative examination, it follows that the examination was not necessary and the ALJ did not err.  *See Admaczyk v. Saul*, 817 F. App'x 287, 290 (8th Cir. 2020) (affirming ALJ's decision to deny request for additional consultative examination because substantial evidence in the record supported the ultimate decision); *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012) (same).

Plaintiff asserts that a consultative psychological examination was necessary in this case because "the most recent review of the medical evidence of record by a medical consultant was made on September 18, 2022 … However, a review of the record shows that Plaintiff's mental health conditions deteriorated substantially after that review was conducted."  (ECF No. 9 at 16.)

12

Plaintiff contends this deterioration is evidenced by her inpatient admissions in 2023 and the checkbox forms submitted by Dr. Wamuo.  (*Id.*)  But the ALJ considered this evidence and concluded that they were not persuasive and did not support additional limitations.  (R. 23-24, 30-31.)  Based on his review of Plaintiff's entire treatment history, he reasonably found that the record shows Plaintiff's inpatient admissions were the product of her failure to comply with her medication, not a deterioration of her symptoms that could no longer be managed with her existing treatment regimen.  (R. 555-64, 2759-61, 2824-26.)  Moreover, the Court notes that the ALJ provided Plaintiff an opportunity to submit a recent medical source statement from Dr. Wamuo substantiating the information provided on the checkbox forms, and she failed to do so.   It was Plaintiff's burden to prove the limitations in her RFC.  *See* 20 C.F.R. § 416.920(a)(4)(iv); *Young*, 221 F.3d at 1069 n.5.  A claimant's failure to carry that burden does not constitute legal error on the part of the ALJ.  The Court is therefore unpersuaded that the ALJ erred in denying Plaintiff's request.

### C.      State Agency Consultant Opinion Evaluations

Plaintiff contends the Decision should be remanded because the ALJ "failed to evaluate the consistency and/or the supportability of any of the State agency consultants' opinions."  (ECF No. 9 at 21.)  In evaluating an ALJ's analysis of medical opinions, a court is limited to considering whether the ALJ complied with the Social Security Administration's regulations that prescribe how that analysis should be conducted.  *See Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025).  Those regulations require that an ALJ consider a number of factors in evaluating a medical opinion, but the most important factors are supportability (i.e., the degree to which the medical opinion cited relevant objective medical evidence and explained how that evidence supported the conclusion) and consistency (i.e., the degree to which the medical opinion is consistent with other

medical evidence in the record).  *See* 20 C.F.R. § 404.1520c.  Though an ALJ must consider these factors, his explanation of his analysis does not require "talismanic language."  *Mario O. v. Kijakazi*, No. 21-cv-2469 (NEB/ECW), 2022 WL 18157524, at *11 (D. Minn. Dec. 13, 2022).  Rather, he only needs to make it clear that these factors were considered and explain his reasoning "clear[ly] enough to allow for appropriate judicial review."  *Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025); *see also Mario O.*, 2022 WL 18157524, at *11.

In this case, the ALJ's analysis of the state agency medical consultants' opinions was limited to a statement that Dr. Richard's opinion at the reconsideration level was more persuasive than Dr. Chang's opinion at the initial level, because the former was "better supported by and more consistent with the medical evidence."  (R. 29.)  The ALJ's analysis of the psychological consultants' opinions was similarly limited to him finding their opinions "supported by and consistent with the evidence cited above regarding the claimant's mental health symptoms and course of treatment."  (R. 31.)  The ALJ clearly stated that he considered the prescribed supportability and consistency factors in evaluating these opinions.  The issue is thus whether his terse analysis is adequate to allow for appropriate judicial review.

Though the ALJ's analyses of these opinions are anemic, the Court does not believe they are so deficient as to warrant reversal.  An ALJ's conclusions regarding the consistency and supportability factors "must be read in the context of the decision in its entirety."  *Troy L. M. v. Kijakazi*, No. 21-cv-199 (TNL), 2022 WL 4540107, at *12 (D. Minn Sept. 28, 2022).  When "substantial evidence in the record as a whole supports" the ALJ's persuasiveness analysis, the ALJ's Decision should not be disturbed.  *See Cropper*, 136 F.4th at 813-14.  Here, the ALJ relied on the same evidence the state agency consultants did in making his Decision.  (*See* R. 37-38, 92, 118 listing medical sources relied on by ALJ and state agency consultants.)  The ALJ thoroughly

14

discussed this evidence in detail and explained how it supported his RFC determination. (*See* R. 29, 30-31.) Additionally, the ALJ compared the two medical consultant opinions and adopted the one more favorable to Plaintiff because he found it to be better supported and more consistent with that evidence. (R. 29.) The ALJ also drafted a more restrictive RFC than those suggested by the psychological consultants. (R. 31.) The Court is disinclined to conclude the ALJ committed reversible error in his analysis of the state agency consultants' opinions when: (1.) he stated he considered the factors; (2.) he conducted a meticulous review of the same evidence the consultants considered in forming their opinions, s*ee Cropper*, 136 F.4th at 815 ("[Plaintiff] takes issue with the ALJ's 'cursory' explanation and citation to general portions of the provider notes … [But Plaintiff] ignores the ALJ's thorough review of [the provider's] examination notes earlier in the ALJ's opinion."); and (3.) he found the more restrictive medical opinion to be more persuasive and imposed greater restrictions than the psychological consultants recommended, *cf. Lucus v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (concluding ALJ's failure to properly evaluate medical opinion prejudiced Plaintiff because the opinion supported a more restrictive RFC).

At its core, Plaintiff's issue with the ALJ's analysis is not that the ALJ failed to conduct a thorough analysis of the medical consultants' opinions; rather, Plaintiff does not believe the ALJ should have relied on any of the medical consultants' opinions in creating Plaintiff's RFC. (*See* ECF No. 9 at 22-24.) But even if the ALJ did not rely on these opinions, Plaintiff fails to articulate how the ALJ's otherwise thorough analysis of the objective medical evidence was inadequate to constitute substantial evidence in support of the RFC. *See Young*, 221 F.3d at 1069 n.5 ("RFC is determined at step four, where the burden of proof rests with the claimant."); *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."). Furthermore, the Court does not believe the state agency

consultants' opinions altered the reasonableness of the ALJ's RFC determination since it was well-supported by objective medical evidence that he cited in his Decision. *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) (concluding "any legal error in the ALJ's analysis [of medical opinion] was harmless" because it did would not have altered the disability determination). The Court therefore does not believe the ALJ's poorly articulated supportability and consistency analysis warrants reversal.

For all the aforementioned reasons, the Court recommends that the ALJ's Decision be affirmed.

## RECOMMENDATION

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.  Plaintiff's Request for Relief (ECF No. 9) be **DENIED**;

2.  The Commissioner's Request for Relief (ECF No. 11) be **GRANTED**;

3.  The Decision be **AFFRIMED**; and

4.  Plaintiff's Complaint (ECF No. 1) be **DISMISSED WITH PREJUDICE**.

Dated: January 15, 2026                     *s/ Dulce J. Foster*
                                            Dulce J. Foster
                                            United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  *See* Local Rule 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).